UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTEBAN B. OBISPO,<br><br>        Plaintiff,<br><br>        v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br>Administration,<br><br>        Defendant. | Case No. CV 11-9381-SP<br><br>MEMORANDUM OPINION AND ORDER |

## I.

## INTRODUCTION

On November 16, 2011, plaintiff Esteban B. Obispo filed a complaint against defendant Michael J. Astrue, seeking a review of a denial of supplemental security income ("SSI") and disability insurance benefits ("DIB"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c).

Plaintiff presents two disputed issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly found that he was English literate;

and (2) whether the ALJ properly found that the onset date for his mental impairment was May 26, 2009 and thus not severe. Memorandum in Support of Plaintiff's Complaint ("Pl. Mem.") at 4-9; Defendant's Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-9.

Having carefully studied, inter alia, the parties's moving papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ committed erred when it found that plaintiff was English literate, but that error was harmless. The court also concludes, however, that the ALJ improperly determined the onset date of the mental impairment, and therefore erred in finding plaintiff did not have a severe mental impairment. Accordingly, the court remands this matter to the Commissioner of the Social Security Administration ("Commissioner") in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was fifty-five years old on the date of his December 10, 2009 hearing, has eight years of formal education. AR at 234, 852. His past relevant work includes employment as a hand hose cutter, machine operator, and material handler. *Id*. at 887-88.

In July and August 2004, petitioner filed applications for SSI and DIB, alleging an onset date of April 11, 2002 due to lumbar, cervical, and thoracic strain and left shoulder injuries. *Id.* at 45-46, 51, 234-36. Plaintiff incurred the injuries in a work-related incident. *Id.* at 792-93. Subsequently, plaintiff also alleged disability based on depression. *Id.* at 794. The Commissioner denied plaintiff's application initially, after which he filed a request for hearing. *Id.* at 51-58.

An ALJ postponed the hearing three times, twice due to plaintiff's failure to

appear (for which plaintiff established good cause), and once to allow plaintiff time to obtain legal representation. *Id.* at 93-94, 123, 128, 803-14.  On June 14, 2007, plaintiff, represented by counsel, appeared and testified, through an interpreter, at a hearing before ALJ Eve Godfrey. *Id.* at 815-51.  ALJ Godfrey also heard testimony from Dr. Joseph Jensen, a medical expert, and Freeman Leeth, a vocational expert. *Id.*  On February 7, 2008, ALJ Godfrey denied plaintiff's claim for benefits. *Id.* at 45-50.

On March 6, 2008, plaintiff requested review of the decision. *Id.* at 176. The Appeals Council vacated the decision on March 30, 2009. *Id.* at 189-91.

On December 10, 2009, plaintiff appeared and testified, through an interpreter, at a hearing before ALJ Robert S. Eisman. *Id.* at 852-902.  The ALJ also heard testimony from Dr. Alan Frank, a medical expert, and Frank Corso, a vocational expert. *Id.*  On March 19, 2010, the ALJ denied plaintiff's claim for benefits. *Id.* at 27-37.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff did not engage in substantial gainful activity since his alleged onset date of April 11, 2002. *Id.* at 29.

At step two, the ALJ found that plaintiff suffered from the following severe impairments:  lumbosacral spondylosis; lumbar sprain; left shoulder sprain; and left medial meniscus tear. *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 30.

The ALJ then assessed plaintiff's residual functional capacity ("RFC")[1] and

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152,

determined that prior to May 26, 2009, he had the RFC to perform medium work, but further limited to: work that requires exertion of no more than thirty pounds of force occasionally and 20 pounds of force frequently; stand/walk up to six hours in an eight-hour workday; and no more than occasional stooping and crouching. *Id.* at 31. The ALJ further determined that as of May 26, 2009, plaintiff had the RFC to perform medium work, without the prior limitations, but limited to simple, routine and repetitive tasks.[2] *Id.*

The ALJ found, at step four, that plaintiff was not capable of performing his past relevant work. *Id.*

At step five, the ALJ determined that, based upon plaintiff's age, education, work experience, and RFC, plaintiff could perform a significant number of jobs in the national economy, including garment sorter, sorter, and inspector-packer. *Id.* at 35-36. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 36-37.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id*. at 11-13, 17. The ALJ's decision stands as the final decision of the Commissioner.

### III.
### STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security

---

1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

[2]   The ALJ attributed the less restrictive RFC as of May 26, 2009 to the opinion of Dr. Lloyd Tom, a consultative orthopedic examiner, who examined plaintiff on May 26, 2009. AR at 34.

4

Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## DISCUSSION

**A. The ALJ's Literacy Finding Was Harmless Error**

Plaintiff contends that the ALJ improperly concluded that plaintiff was English literate. Pl. Mem. at 4-6. Specifically, plaintiff argues that he is disabled pursuant to 20 C.F.R. part 404, Subpart P, Appendix 2 ("Grid") because he is

English illiterate, he was closely approaching advanced age as of September 2, 2004, and he only had the RFC to perform light work. *Id.* at 6. The court agrees that the ALJ erred, in part, but the issue does not affect the outcome.

Regardless of the court's finding, this issue is not determinative of whether plaintiff was disabled under the Grid. Plaintiff's argument is based on the premise that if the ALJ erred, he would be disabled pursuant to Grid Rule 202.09, which directs a finding of disabled if the claimant is closely approaching advanced age,[3] he is illiterate or unable to communicate in English, his past relevant work was unskilled, and he has the RFC to perform light work. But contrary to plaintiff's contention, illiteracy or the inability to communicate in English would not render him disabled under the Grid because plaintiff's characterization of his RFC is incorrect. The ALJ clearly stated that prior to May 26, 2009, plaintiff had the RFC to perform medium work with the limitation, among other things, that the work requires exertion of no more than thirty pounds occasionally and twenty pounds frequently. AR at 31. This restriction is greater than the capacity limits for light work but less than those for medium work.[4] Plaintiff's inability to perform the full range of medium work does not mean that he only has the RFC to perform light work. Instead, plaintiff can perform some medium, light, and sedentary work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c). Thus, regardless of whether plaintiff is English literate or able to communicate in English, plaintiff is not disabled under the Grid. *See* Grid Rule 203.03.

---

[3] Ages 50-54 constitute closely approaching advanced age. 20 C.F.R. §§ 404.1563(d), 416.963(d).

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

6

Nevertheless, literacy is a vocational factor relevant to the step five inquiry. *Silveira v. Apfel*, 204 F.3d 1256, 1261-62 n.14 (9th Cir. 2000) (defining illiterate as the inability to read or write in English). Here, the ALJ concluded that plaintiff was English literate and thus able to communicate in English. AR at 35. The basis of the ALJ's conclusion was plaintiff's alleged ability to complete his English language application forms in English. *Id.*

The ALJ's literacy conclusion is not supported by substantial evidence. During the December 10, 2009 hearing, the ALJ asked plaintiff whether, as part of his application process, he completed documents such as pain or work history questionnaires. *Id.* at 871. Plaintiff replied in the affirmative. *Id.* This exchange does not constitute substantial evidence that plaintiff was English literate. The ALJ's question was ambiguous. The ALJ did not ask plaintiff whether he completed the forms himself, but simply if he completed them. Therefore, an affirmative response is equally appropriate if plaintiff filled out the responses himself or if someone translated the document for plaintiff and wrote in plaintiff's translated responses. Indeed, a review of the application documents indicates that the latter is likely. The handwritten responses on the application documents do not appear to match plaintiff's signature. *See, e.g.*, *id.* at 298-302, 306-08. Moreover, it is clear that different people completed the various documents as they contain different handwritings. *See, e.g., id.* Thus, the completed application documents actually support plaintiff's contention that he was illiterate, and do not support the ALJ's contrary conclusion. *See* 20 C.F.R. §§ 404.1564(b)(1); 416.964(b)(1).

Although plaintiff testified that he can read and speak "a little bit" of English (AR at 870), the ALJ did not cite this evidence as a basis for his literacy determination. *See* AR at 32, 35. Moreover, it is unclear what plaintiff meant by "a little bit," or how significant this evidence is in relation to the other evidence of

plaintiff's English skills, which reflects that plaintiff consistently required the assistance of an interpreter. Social Security Administration employees observed that plaintiff was only Spanish speaking. *See, e.g.*, AR at 59, 128. Plaintiff's medical records show that he required an interpreter at his treating and consultative examinations. *See, e.g., id.* at 499, 604, 689, 697, 705, 777. Plaintiff testified at the hearings with the assistance of an interpreter. *Id.* at 815-902. The necessity of an interpreter supports plaintiff's claim that he was English illiterate and unable to communicate in English, or at a minimum, required some language assistance.

The ALJ's failure to include the language limitation in his hypothetical would typically require remand, but in this instance it was harmless. *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the 'expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'") (quoting *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)); *see also* 20 C.F.R. §§ 404.1564(b)(1), (5), 416.964(b)(1), (5) (requiring the ALJ to consider a claimant's English ability in determining what kind of jobs he can perform). At the December 10, 2009 hearing, plaintiff's counsel asked the vocational expert whether someone who was unable to communicate in English could perform the representative jobs he listed. AR at 898. The vocational expert replied that an inability to communicate in English would not substantially affect the jobs he cited because they do not involve a high level of English skills. *Id.* at 898-99. Thus, the vocational expert's testimony would have been the same had the ALJ included the language limitation in the hypothetical.

Accordingly, although the ALJ's conclusion that plaintiff was English literate is not supported by substantial evidence, the error was harmless.

**B.     The ALJ Erred at Step Two**

Plaintiff contends that the ALJ erred at step two by failing to conclude that he had a severe mental impairment. Pl. Mem. at 7-9. Specifically, plaintiff argues that the ALJ incorrectly determined that his mental impairment did not begin until May 26, 2009 and thus was not severe because it had not lasted twelve continuous months. *Id.* at 7. The court agrees.

At step two, the ALJ considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). In order for a claimant to be considered disabled, the severe impairment must have lasted or be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 416.909.

Here, the ALJ determined that plaintiff had the following severe impairments: lumbosacral spondylosis; lumbar sprain; left shoulder sprain; and left medical meniscus tear. AR at 29. The ALJ explained that he found plaintiff did not have a severe mental impairment because, prior to May 26, 2009, plaintiff's impairments were mild, and his current marked mental limitations had not lasted the requisite twelve months. *Id.* at 29-30. The ALJ determined that the onset date of the mental limitations was May 26, 2009, five days after plaintiff's consultative examination. *Id.* at 30.

The record reflects several consultative examinations, but a limited treatment history. In February and March 2005, a psychiatric consultative examiner, Dr. Suzanne Dupee, and a State Agency physician, Dr. C.H. Dudley, opined that plaintiff had "some mild depression" and mild impairments in his ability to relate and interact with others and ability to maintain concentration. *Id.* at 499-518. From July 14, 2006 through November 3, 2006, plaintiff participated in an eight-week biofeedback therapy program at Industrial Psychiatric Network,

9

during which the treating physicians diagnosed him with anxiety and depression. *Id.* at 600-22. On May 21, 2009, Dr. Jeannette K. Townsend, examined plaintiff and diagnosed him with depressive disorder with insomnia, irritability, and decreased appetite. *Id.* at 777-81. Dr. Townsend noted that patient reported attending outpatient counseling at the East Los Aneles Family Health Center (the "Center") since December 2008 and was taking Cymbalta. *Id.* at 778, 781. Dr. Townsend opined that plaintiff had marked limitations in understanding, remembering, and carrying out complex instructions. *Id.* at 782. On November 3, 2009, Maria Evangelina Arroyo, a social worker, signed an Authorization to Release Medical Information. *Id.* at 785. The authorization suggests that Arroyo counseled plaintiff for an unspecified period of time. *Id.*

Even assuming that the ALJ correctly concluded that plaintiff's earlier mental impairment resulted in mild limitations and lasted fewer than twelve months, the record does not support the ALJ's arbitrary finding of an onset date of May 26, 2009. At the latest, the ALJ should have selected an onset date of May 21, 2009, the date of his psychiatric consultative examination, on which the ALJ relied to find plaintiff's mental functional limitations became marked. *See* AR at 30. Choosing May 26, 2009 as the onset date because it coincided with plaintiff's orthopedic examination lacks reason. *See id.* The onset date certainly could not have been *after* Dr. Townsend's examination. Although reflective of questionable consideration of the evidence and reasoning, by itself this five-day error is harmless, as plaintiff's impairment still would not have lasted twelve continuous months with an onset date of May 21, 2009.

But there is also evidence of an earlier onset date. Plaintiff told Dr. Townsend he had been receiving outpatient counseling from a psychologist at the

Center since December 2008.[5] *Id*. at 778, 781. The administrative record does not contain any treatment notes from the Center, but arguably, plaintiff's onset date for his mental impairment was no later than December 2008.

Because the onset date was ambiguous and there is evidence that plaintiff sought treatment prior to the ALJ-determined onset date, the ALJ had a "duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel." *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (citation and internal quotation marks omitted). The ALJ should have contacted the Center to obtain and review plaintiff's medical records. *See Mayes*, 276 F.3d at 459-60 (ALJ has a duty to develop the record further only "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence"); *Smolen*, 80 F.3d at 1288 ("If the ALJ thought he needed to know the basis of [a doctor's] opinion[ ] in order to evaluate [it], he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physician [ ] or submitting further questions to [him or her]."). The ALJ failed to do so, and this was error.

As a sub-issue, plaintiff argues that the ALJ improperly rejected the opinion of social worker Arroyo. Pl. Mem. at 7-9. The court disagrees.

"Lay testimony as to a claimant's *symptoms* is competent evidence which the Secretary must take into account," and cannot be disregarded without a germane reason. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (emphasis in original); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). In contrast, "medical diagnoses are beyond the competence of lay witnesses and

---

[5] Dr. Townsend did not write down the name of the treating psychologist. AR at 778, 781. During his December 10, 2009 hearing, plaintiff testified that he was currently seeking treatment from Dr. Randon, a psychologist, but neither stated when the treatment began nor whether Dr. Randon worked at the Center. *Id*. at 863.

therefore do not constitute competent evidence." *Nguyen*, 100 F.3d at 1467.

Here, plaintiff submitted an Authorization to Release Medical Information in which Arroyo, a social worker, checked off that plaintiff had a "medically verifiable condition" that rendered him unable to work. AR at 785. The ALJ correctly rejected Arroyo's opinion on the basis that she was not an acceptable medical source. *See* AR at 30; 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d); *see also Turner v. Comm'r*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (social workers are not considered acceptable medical sources under the regulations, but instead are treated as other sources). Arroyo did not provide competent evidence that must be considered because she simply made a medical diagnosis but did not offer an opinion as to plaintiff's symptoms.

Further, Arroyo's opinion is irrelevant because it would, at most, establish that plaintiff had a mental impairment as of November 3, 2009. AR at 785. That fact is not in dispute. The issue is whether plaintiff's onset date for his mental impairment was prior to May 26, 2009 and lasted the requisite twelve months to constitute a severe impairment. Arroyo's opinion provides no insight as to the limitations or duration.

But although the ALJ did not err in rejecting Arroyo's opinion, as discussed above, the ALJ did err in failing to fully and fairly develop the record with respect to the onset date of plaintiff's mental impairment. As such, the ALJ's step two determination is not supported by substantial evidence.

## V.

## REMAND IS APPROPRIATE

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke*

*v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings turns upon their likely utility). But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, as set out above, remand is required because the ALJ erred in failing to properly assess the onset date of plaintiff's severe mental impairment. On remand, the ALJ shall: contact plaintiff's treating psychologist(s) in order to obtain plaintiff's treatment records; consider their opinions regarding plaintiff's impairment and limitations; and either credit their opinions, or provide clear or convincing reasons or specific and legitimate reasons supported by substantial evidence for rejecting them. The ALJ shall then proceed through steps three, four, and five to determine what work, if any, plaintiff is capable of performing.

## V.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: October 3, 2012

SHERI PYM
United States Magistrate Judge